LEMUEL LEET et al., Respondents, v. THE JOHN DARE
SILVER MINING COMPANY, Appellant.

White Pine Mining Laws—Necessary Work per Year to Hold Mine. Un-
der the mining laws of White Pine District, as amended in July, 1867, it re-
quires only two days work to hold a "location" for a year; and such location
means an entire mining claim, irrespective of the number of locations or feet.

Meaning of "Location" in White Pine Mining Laws. The word "location,"
as used in the mining laws of the White Pine District means the aggregate of
ground claimed as a mine, and not the interest of a single shareholder.

Appeal from the District Court of the Eighth Judicial District,
White Pine County.

The plaintiffs, Lemuel Leet, Franklin Learned, Samuel C. Flem-
ing, John Bicknell, G. N. Leet, Edward Green, Charles Stimpson,
A. J. Gove, Beatty Elliot and W. H. Stars, sued the defendant to
recover the "Happy Jack Ledge," at Treasure Hill, White Pine
County; and also prayed for an injunction to prevent the removal
of ore therefrom, and for damages for ore already removed. The
cause was tried before a jury, and there was a verdict for plaintiffs,
upon which judgment was entered in their favor for restitution,
damages, and a perpetual injunction. A motion for a new trial
having been denied, defendant appealed.

Robert M. Clarke, A. C. Ellis and Tilford & Foster, for Appel-
lant.

By what rule or definition can an unsegregated interest of a
mining claim, having no particular locality, nor defined nor ascer-
tained limits, except as it is bounded by the mining claim of which
it forms an undivided part, be denominated a "location"? It is
not what is meant by the term "location." (Coleman v. Clements,
23 Cal. 246.) The term means the act whereby a mine is estab-
lished; the claim of right to a definitely ascertained piece of mining
ground. "Notice of location," "mining location," "our location,"
"the Bulwark Company's location," "the Yellow Jacket location,"
are common and every-day expressions, in every case signifying the
whole extent of the territory claimed for mining purposes, and in no
case signifying a fractional part only.

*Thomas P. Hawley*, for Respondents.

The mining laws require that two days work shall be done for each claim or location of two hundred feet, in order to acquire the right to hold the claim for one year.   The language is sufficiently clear and plain to indicate the intention of the miners to be such, and upon reading every section of the laws, it is apparent on the face thereof that such was their meaning.

The mining laws, as we understand them, are sanctioned by the law of Congress, which also fixes the use, meaning and definition of the disputed language.   The Act of July 26th, 1866, uses the words, " no *location* shall exceed, etc."

The question is simply, what was the intention of the miners ? and the intention, as in all cases of construction of writing, public or private, is to be gathered from the language used and from the whole document.

By the Court, JOHNSON, J. :

The record here shows that there is a controversy between the above-named parties respecting the right of possession to certain described mining ground in the White Pine District in this State. At the trial had in the Court below, plaintiff obtained judgment, and a new trial being denied, upon application of defendant this appeal is brought from both the judgment and the order denying a new trial.

Each party claims under the mining rules and regulations of said district, subordinate necessarily to the Federal laws applicable thereto ; and the facts, so far as we consider them material or necessary in determining the question raised on this appeal as agreed to, may be stated thus: The White Pine mining district was organized on the 10th of October, 1865, at which time the miners of said district adopted certain rules and regulations respecting the location and holding of mining claims therein.   On the twentieth of July, 1867, amendments were made to these rules and regulations in certain particulars.   It should furthermore be stated that in this appeal no question is raised as to the regularity of proceeding in adopting the amendments referred to.

The original rules and regulations provided that " each claimant shall be entitled to hold by location two hundred feet on any lead in the district." No specified amount of work on a location thus authorized was required, whereas the amendments of July, 1867, seem to have been intended chiefly to supply this omission. The amended laws bearing upon the questions before us, read as follows : *Second*—When a claim is located and the proper notice put on it, there shall be allowed ten days to file a notice for record, and thirty days additional time, within which the proper amount of work must be done on the ledge. *Third*—All locations already recorded shall have two days work done on them for every location, on or before the first day of February in each year, which work shall hold good until the twentieth of July of the same year, and all locations made hereafter shall have the same amount of work done on them within forty days after locating them; which work shall hold good for one year from the date of the record of such work. *Fourth*—Any location having the necessary amount of work done on it, as in the previous article, shall have the same surveyed and the work recorded by the recorder within ten days after said work is done. *Fifth*—Any claim upon which the necessary work is not done by the first of February shall be subject to re-location. *Sixth*—Any claim [claims] having the necessary work done upon them within three months previous to the adoption of these by-laws, shall be considered as having done work to hold for one year from this date, the same being duly recorded as per article fourth. * * * * *Ninth*— Work done upon any portion of a location shall be deemed as having been done for the benefit of the whole of said location, except as in case as stated hereinafter. * * * * * *Eleventh*—In case when a portion of a company refuse to do the necessary amount of work to hold their claim, after being notified, by placing a written notice on the recorder's office for twenty days, and the other portion of the company wish to work enough to hold their part of the said claim, they shall give notice in writing of their intention to the recorder, and designate what part of the claim they wish to hold, and have the work recorded for that part of the claim, and the balance of said claim shall be subject to re-location if the laws are not complied with."

On the eighth day of June, 1868, the grantors of the "John Dare Mining Company" (defendants) located the "Bulwark mine" of twelve hundred feet, (six locations of two hundred feet each) and within forty days thereafter did two days work on the entire claim.   On the eighteenth day of February, 1869, Leet *et als.* (plaintiffs) located eight hundred feet of the mining ground embraced in that of defendants, known as "The Happy Jack." There were three locations in this company, claiming for each one two hundred feet; also an additional two hundred feet as a discovery claim, to be divided equally between them.   It also appears that within forty days thereafter, these parties had work done on the ground thus located of at least two days for each two hundred feet of said location.

Passing other points made on the hearing of the appeal, we rest our decision on one question in the case which we regard as decisive :   Do these mining laws require two days work for each two hundred feet, or two days work for the entire mining claim, irrespective of the number of locators or feet ?   The rulings and instructions of the Court below, properly brought before us by the exceptions, hold in effect, that the earlier locators—the interest represented by "The John Dare Co."—had forfeited their rights and rendered the mining ground in controversy subject to re-location under the mining laws of the district at the date of the latter location, (February 18th, 1869) for the reason that they had not done two days work for each two hundred feet of the ground they claimed by the "Bulwark mine" location in June, 1868.   If the two days work was sufficient to hold the Bulwark mine—twelve hundred feet—the plaintiff had no right to re-locate any portion of the ground of defendants, and consequently the judgment should be reversed.

It will be seen that section third of the mining laws uses the words "locate," "locations" in the sense as the aggregate of the ground claimed by the parties, and *not* as the interest in common of a single shareholder.   The proper steps being taken, the co-locators have no separate interests, but a common interest, which in itself is not susceptible of division or representation, except under proper judicial proceeding or section eleventh of the mining rules.

Why then attach a responsibility, or worse yet, make a *forfeiture* of a right which is not usually favorably considered by Courts? (Smith's Commentaries, Secs. 459, 468, 495 to 499; *Coleman* v. *Clements*, 23 Cal. 248.)

Section third of these mining laws thus construed harmonizes with other parts of the same laws, as will be seen from the quotations already given, especially section fourth. The entire mining law must be taken and construed together, if need be, and if possible, made to harmonize. (32 Cal. 95; 31 Cal. 240.)

On a full examination of the record in this case, we conclude that in view of the facts shown by defendants in respect to the amount of work done on the location of June 8th, 1868, by their predecessors, that it was sufficient under the mining laws of the district, and consequently the plaintiffs had no right upon that question alone to relocate any portion of the ground claimed by defendants: wherefore the judgment is reversed and cause remanded.